Thomas D. Walk (#5555)
KIRTON & McCONKIE, PC
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84145
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

Michael L. Snyder (*pro hac vice*)
David T. Movius (*pro hac vice*)
David B. Cupar (*pro hac vice*)
McDONALD HOPKINS LLC
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474

*Attorneys for Vita-Mix Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **K-TEC, INC.,** a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>**VITA-MIX CORP.**, an Ohio corporation,<br><br>Defendant. | **MEMORANDUM IN SUPPORT OF VITA-MIX CORPORATION'S MOTION TO STAY PENDING REEXAMINATION AND INTERFERENCE PROCEEDINGS FOR U.S. PATENT NO. 7,281,842**<br><br>Case No. 2:07cv00785<br><br>The Honorable Tena Campbell |

Vita-Mix Corporation ("Vita-Mix") submits this memorandum in support of its motion to stay this case pending a final determination on, and resolution of, the proceedings before the United States Patent and Trademark Office ("USPTO") initiated by Vita-Mix that relate to U.S. Patent No. 7,281,842 (the "'842 patent"), the lone patent asserted by K-TEC, Inc. ("K-TEC") in this case.

## I. FACTUAL BACKGROUND

With this case, K-TEC has now filed suit against Vita-Mix in this district court alleging infringement on the same or similar products on three separate occasions in the past thirty-three months. In each of the three case, K-TEC alleged Vita-Mix has infringed one of a family of patents, which is shown in **Figure 1**, below.



**Figure 1**

In its first case, filed on March 10, 2005, K-TEC alleged that Vita-Mix infringed U.S. Patent No. 6,584,876 (the "'876 patent"). (*See K-TEC, Inc. v. Vita-Mix Corp.,* Case No. 2:05cv00209, Dkt. No. 1.) K-TEC voluntarily dismissed its complaint in that case just thirteen

days after filing once Vita-Mix identified K-TEC's own "ABC Blender Jar" as invalidating prior art to the '876 patent. (Case No. 2:05cv00209, Dkt. No. 2.) K-TEC then requested *ex parte* reexamination of its own '876 patent by the USPTO in view of the ABC Blender Jar. (Request for *Ex Parte* Reexamination, submitted as Exh. 1.) A reexamination certificate has since issued for the '876 patent, by which the USPTO canceled nine of the fifteen claims and substantially narrowed all of the remaining claims. (Reexamination Certificate, submitted as Exh. 2.)

In its second case, filed on February 6, 2006, K-TEC alleged infringement of U.S. Patent No. 6,979,117 (the "'117 patent"). (*See K-TEC, Inc. v. Vita-Mix Corp.,* Case No. 2:06cv00108, the "108 Action," Dkt. No. 1.) Vita-Mix subsequently requested *inter partes* reexamination of the '117 patent on February 12, 2007, which is pending in the USPTO as Reexamination Control No. 95/000,228 (the "'228 Reexamination"). (Request for *Inter Partes* Reexamination, submitted as Exh. 3.) On May 7, 2007, the USPTO rejected <u>all</u> claims of the '117 patent as unpatentable over the prior art. (Office Action, submitted as Exh. 4.) Following those rejections, this Court stayed the '108 Action on July 9, 2007, pending completion of the *inter partes* reexamination proceedings of the '117 patent. (*See* the '108 Action, Dkt. No. 177, submitted as Exh. 5.)[1]

Vita-Mix has since requested further *ex parte* reexamination of the '117 patent based upon, among other things, U.S. Patent No. 7,063,456 ("*Miller et al."),* owned by Vita-Mix (Reexamination Control No. 90/008,814 (the "'814 Reexamination")). (Request for *Ex Parte* Reexamination, submitted as Exh. 7.) On November 9, 2007, the USPTO ordered *ex parte* reexamination of the '117 patent, finding substantial new questions of patentability of <u>all</u> the claims of the '117 patent in light of the prior art – which includes Vita-Mix's *Miller et al.* patent.

---

[1] Vita-Mix submitted a second *Inter Partes* Reexamination Request on April 25, 2007, which was assigned Reexamination Control No. 95/000,256 (the "'256 Reexamination"). (Request for *Inter Partes* Reexamination, submitted as Exh. 6.) That request remains pending before the USPTO.

3

(Office Communication, submitted as Exh. 8.) The '228 and '814 reexaminations now have been merged by the USPTO into one reexamination, with Vita-Mix maintaining full third-party "*inter partes*" participation rights in the merged reexamination. (Decision, *Sua Sponte*, To Merge Reexamination Proceedings, submitted as Exh. 9.)

K-TEC initiated its third case, the present action, on October 16, 2007, this time alleging Vita-Mix infringed the '842 patent. (*See* Complaint, Dkt. No. 2.) After informing K-TEC's counsel of its intent, Vita-Mix initiated an *inter partes* reexamination proceeding against the '842 patent on December 11, 2007. (Request for *Inter Partes* Reexamination, submitted as Exh. 10.) Vita-Mix also has asked the USPTO to declare an interference between the claims of the '842 patent and U.S. Patent Application No. 11/821,485 (the "'485 application), which has been assigned to Vita-Mix. (*See* Preliminary Amendment and Applicants' Interference Suggestion, submitted as Exh. 11.)

Just as the USPTO has provided its expertise through reexamination proceedings to determine the patentability of the claims of the '876 and '117 patents, the reexamination of '842 patent and the interference proceeding will allow the USPTO to apply that same expertise to determine the patentability and ownership of the claimed subject matter of the '842 patent. A stay pending such determinations will conserve judicial and party resources, and will not prejudice K-TEC. Vita-Mix therefore asks the Court to stay this case pending a final determination on, and resolution of, all USPTO proceedings affecting the '842 patent.

## II. BACKGROUND ON *INTER PARTES* REEXAMINATIONS

Any person may ask the USPTO to reexamine an issued patent on either an *ex parte* or *inter partes* basis. 35 U.S.C. §§ 302, 311. The purpose of reexamination "is to 'start over' in the USPTO … and *re*-examine the [original] claims, and to *examine* new or amended claims, as they

4

would have been considered if they had been originally examined in light of all the prior art of record in the reexamination proceeding." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988) (citations omitted; emphasis in original). The USPTO must grant a request for reexamination if "a substantial new question of patentability affecting any claim of the patent" is raised by a request. 35 U.S.C. §§ 304, 312. From 2003 through fiscal year 2007, the USPTO granted over 96% of all requests for *inter partes* reexamination. (USPTO Performance and Accountability Report Fiscal Year 2007 at 121, submitted as Exh. 12.)

During reexamination, the USPTO examines the subject patent in view of printed publications and issued patents. 35 U.S.C. § 311(a). Patent owners may amend the patent claims or add new claims during reexamination, so long as they do not broaden the scope of the original claims. 35 U.S.C. § 314(a). While there are minimal differences between *ex parte* and *inter partes* reexamination proceedings, a primary difference is that, each time the patent owner files a response to an office action during an *inter partes* reexamination, the third-party requester may file "written comments" addressing those issues, much the same as an opposition brief may be filed during litigation. 35 U.S.C. § 314(b)(2). At the conclusion of reexamination, the USPTO issues a reexamination certificate canceling any claim determined to be unpatentable, confirming patentable claims, and incorporating any amended or new claims. 35 U.S.C. § 307.

### III. BACKGROUND ON INTERFERENCE PROCEEDINGS

An interference is a USPTO proceeding to determine the proper ownership of a commonly-claimed invention. *See* 35 U.S.C. § 135; MPEP 2301. If claims are found to interfere, ownership is determined by which party has priority – that is, which party was the first to invent the commonly-claimed invention. *Id*. An interference may exist between two pending applications or between a pending application and an unexpired patent. *Id*.

An applicant with an application pending before the USPTO may suggest an interference to the Examiner assigned to the pending application. 37 C.F.R. § 41.202; MPEP 2301. The Examiner will then refer the suggested interference to the Board of Patent Appeals and Interferences ("BPAI"), where an administrative patent judge will evaluate the suggested interference for interfering subject matter. MPEP 2301. An interference exists if "the subject matter of a claim of one party would, if prior art, have anticipated or rendered obvious the subject matter of a claim of the opposing party and vice versa." 37 C.F.R. § 41.203. If an interference is declared, the BPAI administers the resulting proceedings. MPEP 2301.

Upon its final decision on an interference, the USPTO may issue a patent to an applicant who is found to be the senior or earliest inventor. 35 U.S.C § 135. Concurrently, the claims of an application or patent of the party who is found to be the junior inventor will be finally rejected or canceled by the USPTO. *Id*. In that situation, the party that initiated the interference may assert that resultant patent against all infringers – which may include the non-prevailing party in the interference.

IV.    **ARGUMENT**

Federal courts have the inherent power to stay litigation pending the reexamination of a patent. *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983) (granting stay); *Ethicon*, 849 F.2d at 1426-27 (granting stay). "There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay); *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.,* 48 U.S.P.Q. 2d 1058, 1060 (C.D. Cal. 1998) (granting stay). Courts routinely stay litigation pending reexamination, recognizing the many benefits and advantages that a stay provides. *See, e.g., Bausch & Lomb, Inc. v. Alcon Labs,*

*Inc.,* 914 F. Supp. 951, 953 (W.D.N.Y. 1996) (granting stay); *Emhart Indus., Inc. v. Sankyo Seiko Mfg. Co.,* 3 U.S.P.Q. 2d 1889, 1890 (N.D. Ill. 1987) (granting stay).

Courts likewise routinely stay patent infringement litigation until the completion of administrative interference proceedings in the USPTO to resolve issues of the priority (*i.e.*, ownership) inventions. *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972). "Rather than duplicate the efforts of the [USPTO], the most prudent course to follow is to permit the [USPTO], which possesses substantially more technical expertise than this Court in these areas, to proceed to a final decision in [the interference proceeding]." *NL Chemicals, Inc. v. Southern Clay Products, Inc.*, 14 U.S.P.Q. 2d 1561 (D.D.C. 1989) (granting stay). For that reason, "there is no reason why litigation between the same parties, embracing common issues, should be prosecuted simultaneously. To do so would create an economic hardship on the parties and also result in the ineffective administration of justice. It seems more efficient to allow the administrative study of the patent to conclude before this matter moves toward trial." *Bayer AG v. Novartis Crop Protection Inc.*, 55 U.S.P.Q. 2d 1509 (D. La. 2000) (granting stay).

In evaluating a motion to stay, courts generally consider the following three factors: (1) reduction of the burden on the parties and the Court; (2) the stage of the litigation; and (3) any undue prejudice a stay would cause to the non-moving party. *See ASCII,* 844 F. Supp. at 1380 (granting stay); *Fisher Controls, Co. v. Control Components, Inc.,* 443 F. Supp. 581, 583 (S.D. Iowa 1977) (granting stay); *GPAC, Inc. v. D.W.W. Enter., Inc.,* 23 U.S.P.Q. 2d 1129, 1132-34 (D.N.J. 1992) (granting stay); *Guthy-Renker,* 48 U.S.P.Q. 2d at 1060-61 (granting stay); *Vitronics Corp. v. Conceptronic, Inc.,* 36 F. Supp. 2d 440, 441-42 (D.N.H. 1997); *Tap Pharm. Prods., v. Atrix Labs, Inc.,* 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004) (granting stay). Consideration of these factors weighs overwhelmingly in favor of a stay in this case.

## A. Entry Of A Stay Will Reduce The Burden On The Parties And The Court.

The Federal Circuit has explained that a "purpose of the reexamination procedure is to eliminate trial of [the validity] issue … or to facilitate trial of that issue by providing the district court with the expert view of the USPTO." *Gould,* 705 F.2d at 1342. The many advantages of staying litigation pending the outcome of reexamination proceedings include the following:

- The suit likely will be dismissed if reexamination invalidates the patent or narrows its claims such that no infringement issue remains;

- The reexamination record constitutes intrinsic evidence for claim construction and may be entered at trial to reduce the complexity and length of the case;

- Prior art that will be presented to the jury will first have been considered by the USPTO, with its particular expertise;

- Discovery problems relating to prior art can be alleviated, and issues, defenses, and evidence will be more easily limited in pretrial conferences;

- The outcome of the reexamination may encourage settlement; and

- Costs likely will be reduced for both parties and the Court.

*See, e.g., Fisher Controls,* 443 F. Supp. at 582 (granting stay); *Emhart Indus.,* 3 U.S.P.Q. 2d at 1890 (granting stay); *Gonnocci v. Three M Tool & Machine Co.*, 68 U.S.P.Q. 2d 1755, 1757 (E.D. Mich. 2003) (granting stay); *GPAC*, 23 U.S.P.Q. 2d at 1131-32 (granting stay).

Where *inter partes* reexamination is granted, 71% result in <u>all</u> of the claims of the patent being rejected or cancelled, while 28% result in claims that are altered, and only 1% result in all claims being confirmed. (Joseph D. Cohen, Esq., *What's Really Happening in* Inter Partes *Reexamination,* at 13-14 (originally published at 87 Pat. & Trademark Off. Soc. 207 (2005), submitted as Exh. 13.)

The USPTO through reexamination already has determined that all of the claims of the related '117 patent are unpatentable based on the prior art. (*See* Office Action, submitted as Exh,

4.) The USPTO also has evaluated the merits of the '814 Reexamination and determined that the prior art asserted by Vita-Mix presents substantial new questions of patentability for *all* claims of the related '117 patent. (*See* Office Communication, submitted in Exh. 8.) These determinations are significant because the USPTO also has determined that the claims of the '842 patent are "not patentably distinct" from the claims of the '117 patent. (*See* Terminal Disclaimer for '842 patent, submitted as Exh. 14.) Vita-Mix has set forth in detail in its Request for *Inter Partes* Reexamination of the '842 patent the specific reasons why all of the claims asserted in this case likewise are unpatentable over the prior art. (*See* Request for *Inter Partes* Reexamination of the '842 patent, submitted as Exh. 10.) Thus, there should be little doubt that the reexamination of the '842 patent will clarify or eliminate a number of issues in this case, if not resolve it altogether. *See Gould,* 705 F.2d at 1342 (affirming stay).

A stay will be particularly beneficial in this case because the Court has not yet construed the claims of the '842 patent pursuant to *Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996). Statements made by K-TEC during the reexamination proceeding will become part of the prosecution history for the '842 patent that should be relevant as intrinsic evidence for use during claim construction. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) (statements in reexamination relevant to claim construction); *Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (prosecution history relevant to claim construction). Thus, absent a stay, the Court likely will need to revisit and possibly amend any claim construction ruling if any claims survive reexamination. In that situation, the record of the USPTO proceeding could be introduced as evidence, thereby giving the Court and finder of fact the benefit of the USPTO's special expertise in addressing validity issues. *See EchoStar Tech. Corp. v. TiVo, Inc.,* 2006 U.S. Dist. LEXIS 48431, at *11 (E.D. Tex.

2006) ("[T]o the extent the reexamination proceeding affirm the claims at issue, the Court will then have the benefit of the USPTO's expert analysis of the prior art that allegedly invalidates or limits the claims.") (submitted as Exh. 15). Entry of a stay therefore will reduce the burden on the parties and the Court and eliminate the potential for duplicative proceedings once the reexamination is complete, regardless of its outcome.

A stay pending resolution of the interference proceedings initiated by Vita-Mix likewise will reduce the burden on the parties and the court. In an interference proceeding the BPAI determines questions of priority of the inventions. 35 U.S.C. § 135(a). The question of priority is dispositive of the question of ownership of the patented invention. Upon the final decision by the BPAI, a patent claiming the inventive subject matter may be issued to the applicant found to have the earliest priority date. *Id*. If it is found that the patentee *does not* have the earliest priority date, the claims of that patent will be canceled by the USPTO. *Id*. Courts therefore rely on the determinations in BPAI interference proceedings to assist in determining the merits of a case. *See Bayer AG,* 55 U.S.P.Q. 2d at 1509; *Childers Foods, Inc. v. Rockingham Poultry Marketing Co-op, Inc.*, 203 F. Supp. 794, 797. That is because such results may lead to the disposal of the case. *See Filtrol Corp.*, 467 F.2d at 244 ("If the decision in the interference proceeding were to go against the party claiming the patent in the court action, then there would be no necessity for a trial, since the party would no longer be the holder of an arguably valid patent."); *Bayer AG,* 55 U.S.P.Q. 2d at 1509 ("[I]f the patent held by [plaintiff] is held to be invalid in an Interference proceeding, this case may be disposed of in its entirety.").

Vita-Mix, in its request to the USPTO to declare an interference between the '842 patent and the '485 application, has identified all fifteen claims of the '842 patent as interfering with the claims of the '485 application. (*See* Exh. 11.) K-TEC's sole claim in this case (its third against

Vita-Mix in this Court) is an allegation that Vita-Mix's containers infringe one or more of the claims of the '842 patent. (*See* Complaint, Dkt. No. 2.) If the '485 application is shown to have priority over the '842 patent, a new patent would likely be issued to Vita-Mix covering the subject matter of the current '842 patent, and all the claims of the '842 patent will likely be canceled, effectively invalidating the '842 patent. Such a result would grant Vita-Mix the ownership to the claimed subject matter of the '842 patent and leave K-TEC with no grounds on which to sue, thus disposing entirely of the present action. In addition, under such a result, some of K-TEC's present products will infringe the claims of Vita-Mix's newly issued patent, and Vita-Mix would have the right to sue K-TEC for infringement of the new patent.

For these reasons, entry of a stay will reduce the burden on the parties and the Court, and this factor weights strongly in favor of granting Vita-Mix's motion.

**B.      Entry Of A Stay Is Appropriate At This Stage Of The Litigation.**

Courts routinely stay litigation pending reexamination when the stay is requested before the parties and the Court have expended significant efforts. *See, e.g., United Merchants and Mfg's v. Henderson,* 495 F. Supp. 444, 447 (N.D. Ga. 1980) ("Granting of a stay is particularly appropriate in this case, as the lawsuit is in its earliest stages."); *EchoStar*, 2006 U.S. Dist. LEXIS 48431 at *10 (granting stay after *Markman* hearing with discovery ongoing). Indeed, "courts have granted stays even where discovery has been completed and even when a trial date has been scheduled or is forthcoming." *Gonnocci*, 68 U.S.P.Q. 2d at 1757. *See Emhart Indus.,* 3 U.S.P.Q. 2d at 1974 (granting stay despite completion of discovery); *Grayling Indus. v. GPAC, Inc.,* 19 U.S.P.Q. 2d 1872, 1874 (N.D. Ga. 1991) (granting stay two years after filing and one month after submission of final pretrial order); *Loffland Bros. v. Mid-Western Energy Corp.,* 225

U.S.P.Q. 886, 887 (W.D. Okla. 1985) (granting stay after substantial discovery); *Gould,* 705 F.2d at 1341 (granting stay five years after filing and twenty days before start of trial).

The same arguments relied on by K-TEC's counsel in a separate case demonstrate that a stay is proper in this case, too. *See Muzzy Prods. Corp. v. Primos, Inc.,* 4:05-cv-182 (N.D.Ga. 2005). In *Muzzy*, K-TEC's counsel filed a request for reexamination <u>nearly one year after that litigation commenced</u> and concurrently moved for a stay pending reexamination. (Primos, Inc.'s Motion to Stay Pending Reexamination, filed by Brett Foster, Esq., Exh. 16.) In that case, K-TEC's counsel successfully argued that the court in *Grayling* correctly granted a stay pending reexamination where "the litigation had been pending for two years, substantial discovery had concluded, and only the trial remained." (Memorandum in Support of Primos' Motion to Stay at 4, filed by Brett Foster, Esq., submitted as Exh. 17.) If a stay was appropriate in *Muzzy* a year after litigation commenced – or even two years as K-TEC's counsel advocated with respect to the *Grayling* decision it cited in that case – then a stay would certainly be appropriate here, where the case is barely two months old, no fact discovery has been taken, no depositions taken or even scheduled, no expert discovery commenced, no dispositive motions filed, claim construction has not been briefed and the Court has not scheduled a *Markman* hearing.

Apparently recognizing this situation, K-TEC has moved the Court for a preliminary injunction. However, that motion does not constitute good cause for the Court to deny a stay. Where, as is the case here, there are substantial doubts regarding the validity of a patent, a preliminary injunction is not warranted. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1358 (Fed. Cir. 2001) (vacating entry of preliminary injunction). Moreover, K-TEC cannot establish the necessary irreparable harm because Vita-Mix has been selling the accused

products for nearly two years and K-TEC never before sought a preliminary injunction in its two previous infringement suites against Vita-Mix.

K-TEC further has attempted to artificially advance this the stage of case by serving document requests *after* Vita-Mix informed it that it was requesting reexamination of the '842 patent on December 10, 2007. However, K-TEC's requests are a nullity – and therefore do not constitute good cause for denial of a stay – because the parties have not completed the conference required by Rule 26(f) of the Federal Rules of Civil Procedure for discovery to commence. *See* Fed. R. Civ. P. 26(d)(1) (party cannot seek discovery prior to Rule 26(f) conference). Because the parties have not yet conferred regarding all of the matters required by Rule 26(f) of the Federal Rules of Civil Procedure, Vita-Mix will be moving the Court for a protective order unless K-TEC voluntarily withdraws its premature discovery requests.

For these reasons, judicial and party economy will be best served by a stay pending USPTO proceedings relating to the '842 patent. *See Tap Pharm.,* 70 U.S.P.Q. 2d at 1320 (granting stay, noting "possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the USPTO's findings.").

**C.    Entry Of A Stay Will Not Prejudice K-TEC**.

K-TEC will not suffer any prejudice, let alone undue prejudice, if a stay is entered. As discussed above, this case is still in its very early stages. This case is barely two months old, and nos fact discovery has been taken (despite K-TEC's attempt to serve discovery after learning that Vita-Mix intended to seek a stay and before the required Rule 26(f) conference), no depositions taken or even scheduled, no expert discovery commenced, no dispositive motions filed, claim construction has not been briefed and the Court has not scheduled a *Markman* hearing.

For these reasons, K-TEC's legal expenses should be significantly less in reexamination and interference proceedings as opposed to litigation because there is no discovery during reexamination, there are only limited grounds (publication and prior art patents) upon which the USPTO will reexamine the '842 patent, and discovery in interference proceedings is limited to the narrow issue of interference. *See* 35 U.S.C. §§ 301, 311-314; 37 CFR § 41.150. K-TEC thus will avoid the needless expense of time and money to litigate claim construction, infringement and invalidity issues on any claims of the '842 patent that are cancelled or narrowed as a result of reexamination or ultimately owned by Vita-Mix through interference. *See EchoStar,* 2006 U.S. Dist. LEXIS 48431 at *10 ("It would be an egregious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.").

K-TEC also will not suffer prejudice because, following reexamination, Vita-Mix will be estopped from relitigating issues that it "raised or could have raised during the *inter partes* reexamination proceedings." 35 U.S.C. § 315. A stay while the USPTO reexamines the '842 patent therefore will only serve to streamline this litigation to the benefit of the parties and the Court. *See Echostar,* 2006 U.S. Dist. LEXIS 48431 at *9 ("For these reasons, courts have an even more compelling reason to grant a stay when an *inter partes* reexamination is proceeding with the same parties, which is precisely the case here.").

Finally, K-TEC will not be prejudiced because the USPTO's decision to grant reexamination and to declare interference will be issued soon and the reexamination proceedings will be completed in a timely manner. The USPTO must decide whether to grant or deny reexamination within three months of the request being filed. 35 U.S.C. § 312. Once that determination is made, the USPTO must conduct the reexamination proceeding "with special

dispatch." 37 C.F.R. § 1.937(a); 35 U.S.C. § 314(c); MPEP § 2686.4 (where "litigation is stayed for the purpose of reexamination, all aspects of the proceeding will be expedited to the extent possible."). The BPAI likewise completes interference procedures in a timely manner. (*See* USPTO Performance and Accountability Report Fiscal Year 2006 at 23, submitted as Exh. 18.) Thus, there should be a relatively expedient decision by the USPTO on the key issues of the invalidity and ownership of the '842 patent, which will benefit both the parties and the Court, and this final factor also weights heavily in favor of a stay.

## V. CONCLUSION

For the foregoing reasons, Vita-Mix Corporation respectfully moves the Court to stay this case pending a final determination on, and resolution of, the proceedings before the USPTO initiated by Vita-Mix that relate to U.S. Patent No. 7,281,842.


DATED:  December 14, 2007

Respectfully submitted,

       /s/ David Movius
Thomas D. Walk (#5555)
KIRTON & McCONKIE, PC
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84145
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

Michael L. Snyder (*pro hac vice*)
David T. Movius (*pro hac vice*)
David B. Cupar (*pro hac vice*)
McDONALD HOPKINS LLC
600 Superior Avenue, E., Suite 2100
Cleveland, OH  44114
Telephone:  (216) 348-5400
Facsimile:  (216) 348-5474

*Attorneys for Vita-Mix Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that, on December 14, 2007, a copy of Vita-Mix Corporation's *Motion to Stay Pending Reexamination and Interference Proceedings for U.S. Patent No. 7,281,842* and *Memorandum in Support* was filed with the Clerk of Court using the ECF/CM filing system, which sent notice to the following:

>L. Grant Foster
>Brett L. Foster
>Mark A. Miller
>HOLLAND & HART LLP
>60 East South Temple, Suite 2000
>Salt Lake City, UT 84111-1031
>
>*Attorneys for K-TEC, Inc.*

                                         /s/ David Movius
                                      *One of the Attorneys*
                                      *for Vita-Mix Corporation*